**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 24-cr-303 (ACR)** |
| **v.** | : | |
| | : | |
| **THOMAS BLACKWOOD,** | : | |
| | : | |
| **Defendant** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. Thomas Blackwood has pleaded guilty to two second degree misdemeanors, a violation of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count One) and a violation of 40 U.S.C. § 5104(e)(2)(G) (parading, demonstrating, or picketing in any Capitol building) (Count Two). For the reasons set forth herein, the government requests that this Court sentence Blackwood to 30 days' incarceration on Count One and 36 months' probation on Count Two. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution.

## I. Introduction

Defendant Thomas Blackwood, 70 years old and a 30-year veteran of the Charleston, South Carolina Police Department, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential

election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

Blackwood pleaded guilty to violating 40 U.S.C. § 5104(e)(2)(D) and 40 U.S.C. § 5104(e)(2)(G). The government's recommendation is supported first by Blackwood's history as a police officer of 30 years, and a lobbyist who had previously entered the U.S. Capitol building, which makes his conduct on January 6, as police officers were under attack by a mob, that breached all security access protocols, all the more serious. Second, Blackwood walked into the U.S. Capitol building and was escorted out of the Capitol building by police, only to return and reenter the U.S. Capitol building minutes later. Blackwood spent 30 minutes walking in and out of the U.S. Capitol building, as the riot raged around him.

The Court must also consider that Blackwood's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of Blackwood's crimes support a sentence of 30 days' incarceration on Count One and 36 months' probation on Count Two, along with 60 hours of community service, and $500 in restitution in this case.

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

## II. Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF Dkt 15 (Statement of Offense) at 1-3.

*Defendant Blackwood's Role in the January 6, 2021 Attack on the Capitol*

Blackwood drove from his home in South Carolina to Washington, D.C. on January 5, 2021, in anticipation of the "Stop the Steal" rally on January 6th. Blackwood and his friend Natalie Beyeler, charged in 24-cr-100 (ACR),[2] spent the night in Washington, D.C. on January 5, 2021.

On January 6, 2021, Blackwood and Beyeler attended the Trump Rally at the Ellipse, near the Washington Monument. After the rally, Blackwood and Beyeler walked to the Capitol. (Blackwood is identified in red in the images in this sentencing memorandum.)



*Image 1 Blackwood (holding the flag) and Beyeler walking away from the Washington Monument towards the Capitol*[3]

[2] Beyeler is also scheduled to be sentenced by this Court on November 18, 2024.
[3] YouTube | Dan Noakes (Bluebpage) | [youtube] 2021 01 6 March to Capitol 2X-cUuZecb4U8k.mkv 2021 01 6 March to Capitol 2X https://www.youtube.com/watch?v=cUuZecb4U8k&t=1133 Timecode: 18:55

Once at the Capitol grounds, Blackwood walked up the stairs at the West Front.




*Image 2 – Blackwood walking up the steps at the West Front*[4]

Blackwood and Beyeler walked with thousands of rioters and through multiple downed barricades, towards the Capitol building.

[4]YouTube | The Allen Report (UC5NJlt5YSHA62ozQbD_fe8Q) | [youtube] Cop Vs The American People!!-70SspWNp4Bg.mp4 Cop Vs The American People!! https://www.youtube.com/watch?v=70SspWNp4Bg&t=5
Timecode 0:09



*Image 3 - Blackwood and Beyeler (circled in yellow) standing on the West Terrace*[5]

Instead of turning around and leaving the U.S. Capitol grounds when they saw the downed barricades, Blackwood and Beyeler entered the U.S. Capitol building. Blackwood entered the Capitol building, knowing that Congress was in session and intending to impede the Joint Session of Congress that was convened to certify the results of the 2020 Presidential election—a fundamental step in the peaceful transition of power in this country.

[5]Video_4951676291540898.mp4 Archive.org Link https://archive.org/download/Wezxg58PppWWwnGPF/Facebook_video_4951676291.mpeg4 Timecode: 5:53

According to video surveillance footage from U.S. Capitol Police CCTV, Blackwood and Beyeler first entered through the Parliamentarian Door (also known as the Senate Fire Door) at 2:55 p.m.:



*Image 4 - View from the back of Beyeler, holding a flag, followed by Blackwood entering the U.S. Capitol building at 2:55 p.m.*



*Image 5 - View from the front of Beyeler and Blackwood, holding a phone, entering the U.S. Capitol building at 2:55 p.m.*

Blackwood and Beyeler were stopped by police officers who blocked them from advancing further and required them to leave the building. Blackwood and Beyeler turned around and walked out the same door, escorted by police officers, seven minutes later, at 3:02 p.m.:




*Image 6 - Blackwood and Beyeler, holding the flag, escorted out of the U.S. Capitol Building by police*

When questioned by the FBI during an interview on December 9, 2021, Blackwood admitted that he entered the U.S. Capitol Building once, but claimed that he had no specific recollection of entering the building a second time. As reflected in this submission, third party and CCTV video footage show that Blackwood, still with Beyeler, did indeed enter the U.S. Capitol Building a second time.

Blackwood and Beyeler walked past fellow rioters who were climbing in through the window and re-entered the U.S. Capitol building at 3:10 p.m., this time through the Senate Wing Door with the fire alarm blaring:



*Image 7 - Blackwood' and Beyeler (circled in yellow) walking towards the Senate Wing Door, past a rioter clambering through the window*[6]




*Image 8 - Blackwood, with his phone, and Beyeler, with her flag, re-enter the U.S. Capitol building, while other protesters enter through the broken window*

[6] Court Case Files | Anthony Puma (Anthony Michael Puma) | GEX 3 [11_GH040034].h264.mp4 https://archive.org/details/gex-3-11-gh-040034.h-264 Timecode: 3:30

After re-entering the U.S. Capitol building, Blackwood and Beyeler walked to, and then around, the Crypt for approximately 15 minutes:



*Image 9 - Blackwood and Beyeler in the Crypt*

Approximately 30 minutes after they first entered, Blackwood and Beyeler walked back out through the Senate Wing Door at 3:25 p.m.:




*Image 9 - Beyeler and Blackwood walk out of the U.S. Capitol building through the Senate Wing Door at 3:25 p.m.*

After leaving the building, Blackwood and Beyeler stood outside the Senate Wing Door:




*Image 10 - Blackwood and Beyeler standing outside the Senate Wing Door*[7]

[7] YouTube | SCNRbot (UCqFdvJdTk5vDqyVS4hRHipg) | [youtube] 4K Footage of Trump Supporters Storm Capitol Building during January 6 Insurrection-8Vh8wPeo6Jk.mkv
4K Footage of Trump Supporters Storm Capitol Building during January 6 Insurrection
https://www.youtube.com/watch?v=8Vh8wPeo6Jk&t=1092
Timecode: 18:11

*Blackwood's Interview with the FBI*

Blackwood voluntarily spoke with the FBI on December 9, 2021. He told the FBI that Beyeler was his girlfriend. Blackwood claimed that he and Beyeler went to President Trump's speech, and then followed others to the U.S. Capitol. He claimed he thought this was part of the scheduled events. Upon reaching the U.S. Capitol, Blackwood and Beyeler stood on the steps outside the U.S. Capitol building, and then he and Beyeler entered the U.S. Capitol building through an open door.

Blackwood claimed to the FBI that he and Beyeler were waved inside by a police officer. This assertion is contradicted by video surveillance footage (snapshotted above), which shows no officers waving them in, only officers escorting them out. Blackwood claimed that while inside the building, he saw police officers directing the flow of traffic through the hallways. When Blackwood saw rioters inside legislative offices and others breaking out windows, he claimed, he decided that he and Beyeler needed to leave. Blackwood said he had been inside the U.S. Capitol before as a lobbyist, so he knew where they needed to go to get out of the building, but the officers inside the building would not allow them to go in that direction. Finally, Blackwood said that he approached a police officer and asked him how to get out of the building. The officer directed Blackwood to follow another police officer and take as many people as he could with him. Blackwood told the FBI that he followed these directions, and he and Beyeler finally got out of the building. Blackwood told agents that he and Beyeler were only in the building between three to five minutes. Blackwood told the agents that after he and Beyeler left the building, they remained on the steps of the Capitol and continued to take pictures and video.

Blackwood failed to report that, after admittedly being directed to leave the building and take as many people out of the building with him as he could, he proceeded immediately to another

breached entry point—where alarms were blaring, broken glass was scattered, and rioters were climbing through windows—and entered a second time. If, as Blackwood told the FBI, he saw rioters in private office spaces and destroying property, he did not act as any reasonable police officer and former lobbyist familiar with the historic building would act and remove himself from the situation. Instead, as the video evidence revealed, Blackwood went back inside for a second time.

*The Charges and Plea Agreement*

On June 25, 2024, the United States charged Blackwood in a two-count Information with violating 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count One) and a violation of 40 U.S.C. § 5104(e)(2)(G) (parading, demonstrating, or picketing in any Capitol building) (Count Two). On July 16, 2024, pursuant to a plea agreement, Blackwood pleaded guilty to the two counts in the Information. By plea agreement, Defendant agreed to pay $500 in restitution to the Architect of the Capitol.

## III. Statutory Penalties

Blackwood now faces sentencing for violating 40 U.S.C. § 5104(e)(2)(D) and § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, the defendant faces up to six months of imprisonment and a fine of up to $5,000 on each count. The defendant must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

## IV. Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the

Section 3553(a) factors weigh in favor of 30 days' incarceration on Count One and 36 months' probation on Count Two, along with 60 hours of community service, and $500 in restitution.

**A. The Nature and Circumstances of the Offense**

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Blackwood's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Blackwood, the absence of violent or destructive acts is not a mitigating factor. Had Blackwood engaged in such conduct, he would have faced additional criminal charges.

Two of the most important factors in Blackwood's case are that he is a former police officer, who failed to follow the orders of police officers, and a former lobbyist, who understood the proper way of entering the U.S. Capitol building. As he entered the U.S. Capitol grounds, walked up the Capitol steps, stood on the West Plaza, and then repeatedly entered the building, Blackwood undoubtedly saw violence and aggression towards the police, and yet he did not leave. Further, Blackwood asserts that police were waving him in, but Blackwood knew better. As a lobbyist who had previously entered the U.S. Capitol grounds and building, he must have known about the safety and access protocols required to enter, and he knew that none of the rioters, including himself, abided by those protocols. He knew he was not allowed in that building, but he nonetheless chose to enter and remain there. Twice.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of 30 days incarceration in this matter.

**B. Blackwood's History and Characteristics**

Blackwood's long history of law enforcement service renders his conduct on January 6 all the more troubling. As a former police officer, Blackwood chose to actively ignore the police presence, the rioters jumping through the broken windows, and his chaotic surroundings. Instead of turning around and leaving Capitol grounds, he walked up the Capitol steps and into the building. As someone who had previously worked at the U.S. Capitol building as a lobbyist, Blackwood was well aware of all the security precautions that were violated when the rioters stormed the building. He would have known as well as anyone that day that the building was not open to the public to enter through shattered glass and broken doors, roam freely, and create a loud, violent, raucous disturbance on a day when both houses of Congress were in Joint Session with the Vice President presiding. Blackwood's time as a lobbyist is an aggravating factor warranting a significant sentence, because he would have known just how chilling this event was to the people working inside the Capitol. And worse, after being escorted out by officers, he did not leave. Instead, he turned around and walked back into the building. And he stayed in the building for 30 minutes. He knew this second entry was even more incriminating than the first, after he had been escorted out, and he lied to the FBI to conceal his bad behavior.

The government is well aware that Blackwood is a 70 year-old man with a heart condition, but neither his age nor his poor health dissuaded him from joining the attack on the Capitol on January 6.

//

//

**C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law**

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

**D. The Need for the Sentence to Afford Adequate Deterrence**

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

Specific deterrence is necessary here. Blackwood has consistently minimized his actions on January 6th and has yet to evince any remorse, much less take any steps to denounce his actions on January 6th, including to the Probation officer who conducted his PSR interview.

When interviewed almost one year after the events of January 6th, Blackwood told the FBI that a police officer waved him into the building, that he only went into the building once, and that he was only in the building for three to five minutes. None of these assertions are true, and they demonstrate – at best – a tendency to minimize his criminal behavior and outright conceal the worst aspects of his conduct that day.

Further, when asked for a statement by the PSR writer, the Defendant solely admitted to "all of the elements as set forth above." ECF Dkt. 18 (PSR) at ¶ 24. Although the PSR writer provided the opportunity for contrition or remorse, no such sentiments were forthcoming.

**E. The Need to Avoid Unwarranted Sentencing Disparities**

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers.[8] This Court must sentence Blackwood based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Blackwood has pleaded guilty to the two counts in the Information, in violation of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the

[8] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

United States Capitol) (Count One) and 40 U.S.C. § 5104(e)(2)(G) (parading, demonstrating, or picketing in any Capitol building) (Count Two). These offenses are Class B misdemeanors. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, judges of this court have sentenced Capitol breach defendants who entered and exited the Capitol building multiple times, served as law enforcement officers, and/or minimized their criminal activity thereafter.

Tam Dinh Pham was an 18-year veteran of the Houston Police Department at the time he entered the U.S Capitol building on January 6th, spent 20 minutes inside the building, and downplayed his conduct when interviewed by the FBI. *United States v. Pham*, 21-cr-109 (TJK). He pled guilty to 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating or Picketing in the Capitol Building. The Government recommended a 60-day sentence, and the Court ultimately sentenced Pham to 45 days' incarceration. The Government is recommending a lower sentence for Blackwood because of Blackwood's age and health status: Pham was 49 years old, with no significant health issues at that time.

*United States v. Watrous*, 21-cr-627 (BAH) is also informative. Watrous walked to the Capitol building after the Trump rally, entered the Capitol building and remained for about five minutes, left and then reentered the building. Further, when interviewed by the FBI, he admitted to his presence at the Capitol but minimized his conduct on January 6th. Watrous pled guilty to 40

U.S.C. § 5104(e)(2)(G), Parading, Demonstrating or Picketing in the Capitol Building. The Court sentenced Watrous to 14 days' incarceration. Although *Watrous* is informative, the Government is recommending a higher sentence for Blackwood, because Blackwood position as a police officer and lobbyist.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V. Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[9] Generally, restitution under the VWPA must "be tied to the loss

[9] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense

caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Blackwood must pay $500 in restitution, which reflects in part the role Blackwood played in the riot on January 6.[10] ECF Dkt. 14 (Plea Agreement) at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023. *Id.* Blackwood's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* ECF Dkt. 18 (PSR) at ¶ 68.

## VI. Fine

The defendant's convictions for violations of 40 U.S.C. §§ 5104(e)(2)(D) and (G) subject him to a statutory maximum fine of $5,000 on each count. *See* 18 U.S.C. § 3571(b). In determining whether to impose a fine, the sentencing Court should consider the defendant's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1); See U.S.S.G. § 5E1.2(d). The

---

against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

[10] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

sentencing guidelines provide for a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine. U.S.S.G. § 5E1.2(a), (e) (2023).

The burden is on the defendant to show present and prospective inability to pay a fine. *See United States v. Gewin*, 471 F.3d 197, 203 (D.C. Cir. 2006) (explaining that "it makes good sense to burden a defendant who has apparently concealed assets" to prove that "he has no such assets and thus cannot pay the fine"); *United States v. Lombardo*, 35 F.3d 526, 528 (11th Cir. 1994).

Here, the defendant has not shown an inability to pay, and the Court should impose a fine. *See* U.S.S.G. § 5E1.2(c).

**VII. Conclusion**

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Defendant to 30 days' incarceration on Count One and 36 months' probation on Count Two, along with 60 hours of community service, and $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Blackwood's liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: s/ *Alexandra F. Foster*
Alexandra F. Foster, Esq.
Assistant United States Attorney
D.C. Bar No. 470096
Detailee – D.C. U.S. Attorney's Office
601 D St. NW
Washington, D.C.