**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>vs.                                                    )<br>)<br>)<br>THOMAS E. BLACKWOOD, SR.      )<br>)<br>_____ ) | Case No. 1:24-cr-00303 (ACR) |

**DEFENDANT'S SENTENCING MEMORANDUM**



Mr. Blackwood accepts full responsibility for his conduct on the offense date. Regrettably, he engaged in disorderly and disruptive conduct when he entered the U.S. Capitol building, however, there is no evidence that he assaulted law enforcement or destroyed property. Despite suffering a massive heart attack this summer causing him to undergo triple bypass surgery, Mr. Blackwood has been fully compliant with the conditions of his pretrial supervision, has appeared for all scheduled Court appearances, and is not a flight risk or a danger to the community. Mr. Blackwood has no criminal history whatsoever, including zero traffic infractions. ECF Dkt. 20

1

(PSR) at pg. 1, and ¶ 20; ECF Dkt. 21 (USPO Sentencing Recommendation) at pg. 1; and ECF Dkt. 22 (Status Report).

## BACKGROUND

On January 5, 2021, Thomas E. Blackwood, Sr. ("Tommy" or "Mr. Blackwood") spent the night in Maryland with his friend, Dr. Natalie Beyeler. The purpose of his visit was two-fold; to attend the "Save America" rally near the Washington Monument the following morning, and to research his family history in Manassas, VA on his way back to South Carolina. At the conclusion of the spirited rally held on January 6, wherein President Trump encouraged his supporters to "walk down to the Capitol, and we're going to cheer on our brave senators, and congressmen and women,[1]" Tommy found himself among thousands of Trump supporters all walking in the same direction, towards the U.S. Capitol Building. While Tommy was aware that Congress was in session, he remained unaware of the violence that had transpired ahead of him that eventually allowed him access up the stairs of the West Front and into the open Parliamentarian Door.

Within minutes of entering the Capitol, it became clear to Tommy and Dr. Beyeler that the ongoing acts taking place at the Capitol were not part of the scheduled events, thus he immediately attempted to escort Dr. Beyeler to the nearest exit point. As a 30-year law enforcement veteran, having retired as a Sr. Lieutenant with the North Charleston Police Department in 2008, Tommy sought out the first police officer he could find and specifically requested directions to the nearest exit. Less than seven (7) minutes later, they exited the Capitol through the same door they entered.[2]

---

[1] See Transcript of Trump Jan. 6, 2021 Speech: Read: Former President Donald Trump's January 6 speech | CNN Politics
[2] As referenced in ECF Docket 15 (SOO) and ECF Docket 20 (PSR), Mr. Blackwood does not specifically recall entering or exiting more than once, however, he does remember walking around the Crypt while looking for a restroom to use prior to exiting. Nonetheless, as reflected in the SOO and PSR, Mr. Blackwood admits that an individual matching his description appears to enter, exit, re-enter, and exit a final time between 2:55pm and 3:25pm.

As reflected in the PSR, Mr. Blackwood is an unlikely defendant. He was born in Charleston, South Carolina on June 22, 1954, and has been a lifelong resident of South Carolina, except for 2 years in the early 1970's when he moved to North Carolina to pursue a baseball career. In 1976, he joined the North Charleston Police Department and was married from 1980 – 1995, which produced four (4) children, all of whom continue to reside in South Carolina and remain extremely close with their father. Mr. Blackwood maintains a positive and close relationship with his children and four (4) grandchildren, pictured above. He has no criminal history, not even a traffic ticket, and has spent his entire adulthood enforcing and obeying the law. No one is more disappointed in his actions on the incident date than Mr. Blackwood; he truly believed he was participating in an ongoing event organized by the President of the United States, yet readily admits that he should have been disciplined enough to remove himself from the situation that quickly unfolded around him. He regrets failing to do so, regrets not being able to persuade Dr. Beyeler from doing so, and as evidenced by his guilty plea, takes full responsibility for his actions.

## **PHYSICAL AND MENTAL HEALTH**

Mr. Blackwood, now 70-years-old, has never abused alcohol, never experimented with controlled substances, and has no history of mental illness. He has suffered from Type 2 diabetes and high cholesterol since 2016, requiring him to check his blood sugar levels and receive medications daily. Otherwise, up until the final weekend of August of 2024, he remained relatively healthy. While visiting Myrtle Beach, South Carolina, Tommy suffered a massive heart attack and had to be resuscitated on multiple occasions. He was rushed via ambulance to Grand Strand Hospital, and during his three-week stay, Tommy underwent triple bypass surgery. Per the physician, if a medical doctor had not been onsite at his hotel when he suffered the heart attack, he would have most certainly expired. He considers himself extremely lucky to be alive, and while

always appreciative of the life he lives and his closeknit relationship with his family and friends, this recent medical scare has caused him to further appreciate his many blessings. While he has no specific physical limitations, he continues to participate in physical therapy to improve his overall strength and a strict regimen of doctor visits following his triple bypass surgery. In the coming weeks, Tommy is scheduled for an echocardiogram to determine whether a pacemaker is required to further his recovery.

## SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, factors weigh in favor of ordering Mr. Blackwood to pay a sum certain fine amount up to Five-Thousand Dollars ($5,000.00) per count and Ten Dollars ($10.00) mandatory assessment fee per count, and pursuant to 18 U.S.C. § 3663(a)(2), pay restitution in the amount of Five-Hundred Dollars ($500.00) to the Architect of the Capitol.

### A. The Nature and Circumstances of the Offense

What took place at the Capitol on January 6, 2021, is unconscionable and inexcusable, however, in fashioning a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense committed by Mr. Blackwood, this Court must focus solely on his actions that day. As discussed above and echoed in other court filings, Mr. Blackwood's role, while regrettable, was minimal and passive. Admittedly, Mr. Blackwood entered the US Capitol while Congress was in session in support of President Trump causing an official act of Congress to be disrupted, however, within minutes of doing so, he purposely sought out law enforcement to locate the closest exit and did so within seven (7) minutes of entering the building. While he does not

recall entering a second time, he does recall looking for a restroom in the area of the Crypt, and CCTV footage shows an individual matching his description, re-entering the Capitol eight (8) minutes later and walking around the Crypt for less than fifteen (15) minutes before exiting a final time. Therefore, at most, Mr. Blackwood entered and remained in the Capitol for a total of twenty-two (22) minutes on the incident date, and most importantly, there is no evidence that he assaulted law enforcement or destroyed property. In fact, there is no evidence that he even raised his voice or ever touched anything or anyone other than Dr. Beyeler. As referenced above and included in ECF Dkt. 22 (Status Report), Mr. Blackwood has abided by all terms of his pre-trial supervision for the preceding nine (9) consecutive months. Accordingly, the nature and circumstances of this offense and strict compliance of supervision fail to establish the need to impose a sentence of incarceration or a term of continued supervision.

### B. Blackwood's History and Characteristics

As discussed above, Mr. Blackwood is a 70-year-old grandfather of four with no criminal history, no traffic violations, no pending warrants, and no violations while under pre-trial supervision for the last nine (9) months. He presents no danger to the community and remains sincerely remorseful for even putting himself in this position. Mr. Blackwood has no history of problematic substance use or mental health issues, has four (4) adult children that live in his home state, along with his four (4) grandchildren, all of whom adore him, is a retired law enforcement officer with an impeccable record and reputation, and continues to use this lapse in judgment to mentor local law enforcement officers and private investigators.

Physically, however, he is limited, and should he have any desire to participate in a similar rally in the future, which he does not, his physical condition would prevent him from even traveling to the area, much less participating. As discussed, his recent triple bypass surgery, coupled with

his ongoing treatment for diabetes and high cholesterol, requires constant monitoring. In the next two (2) weeks, he will present to his cardiologist to determine whether a pacemaker is required to continue living out his twilight years in a safe and healthy manner. While these physical limitations were not yet present on the incident date and by no means justify his actions, they fail to establish the need to impose a sentence of incarceration or term of supervision and support the justification for imposing a fine and restitution.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

As discussed above, Mr. Blackwood accepts responsibility for the part he played in the events of January 6, 2021, which clearly amounted to more than a simple protest or trespass. However, this Court mush fashion a sentence based solely on the conduct of Mr. Blackwood himself, not the violent acts of others. Without minimalizing his conduct, which was criminal in nature, he respectfully requests the Court to be mindful of what he did not do while inside the Capitol for less than twenty-two (22) total minutes. There is no evidence that he did anything other than make unlawful entry, seek the assistance of local law enforcement, look for a restroom, and exit peacefully. This factor supports a sentence that includes the payment of a fine and restitution.

### D. The Need for the Sentence to Afford Adequate Deterrence

This factor also supports the imposition of a sentence that includes the payment of a fine and restitution. In short, the situation Mr. Blackwood finds himself in currently is more than enough to deter him from ever putting himself in a similar situation, and as evidenced by his lack of criminal history, any sentence, to include the imposition of a fine and restitution, will serve as a deterrence to future criminal acts. As a direct result of the stress and angst this matter has caused

him, he has suffered financially, emotionally, and to state the obvious, physically. Further, the imposition of a fine and restitution shall deter any future acts by those who wish to unlawfully enter the Capitol to disrupt a proceeding and will serve as a reminder that there will be consequences, even for those who enter and remain passive for a minimal amount of time.

### E. The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the Sentencing Guidelines do not apply to the offenses committed by Mr. Blackwood, however, it should be noted that, with rare exception, individuals sentenced in the United States District Court for the District of Columbia following convictions under 40 U.S.C. § 5104(e)(2)(D) or 40 U.S.C. § 5104 (e)(2)(G) have received a sentence that includes a short term of probation, a fine, community service, restitution, or a combination of same, thus imposing a sentence of incarceration in the instant case would create an unwarranted sentencing disparity.[3]

### F. Restitution

The parties agree, as permitted under 18 U.S.C. § 3663(a)(3), that Mr. Blackwood shall pay $500 in restitution to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities.

### G. Fine

Pursuant to 40 U.S.C. § § 5104(e)(2)(D) and (G), Mr. Blackwood's convictions subject him to a statutory maximum fine of $5,000 on each count. In determining whether to impose a

---

[3] To date, of the 162 Defendants sentenced following a guilty plea to either or both 40 U.S.C. § 5104(e)(2)(D) or (G) misdemeanor offenses, only 12 (7%) received a 30-day sentence that is being requested by the Government in this matter, and only 34 of 162 received a single-day of incarceration. See https://www.justice.gov/usao-dc/capitol-breach-cases

fine, the Court should consider the defendant's income, earning capacity, and financial resources. 18 U.S.C. § 3572(a)(1); U.S.S.G. § 5E1.2(d). As reflected in the PSR, Mr. Blackwood retired in 2008 and opened a private investigation business, where he earned approximately $100,000.00 per year prior to the pandemic. Since then, the business has steadily declined, resulting in little to no income in the last 12-18 months. However, Defendant receives monthly social security payments and a monthly pension, resulting in a positive net monthly cash flow of over Six-Thousand Dollars ($6,000.00).[4] Further, Mr. Blackwood recently sold his primary residence generating significant net proceeds. He now resides at an apartment in North Charleston, S.C., as verified by Officer Christopher Tynes on November 1, 2024. (ECF Dkt. 22 at pg. 2) As a result, after considering Mr. Blackwood's income, earning capacity, and financial resources, he is able to pay a fine in the discretion of the Court, up to the maximum fine amount per count.

In determining the fine amount, the Court shall consider, among other factors, the expected cost to the government of any imprisonment, supervised release, or probation component of the sentence, of which only the latter is applicable to the instant case. 18 U.S.C. § 3572(a)(6); U.S.S.G. § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests that the Court use a monthly cost of $366 for supervision. Applying this advisory amount to the recommended sentence included in the U.S. Probation Office Sentencing Recommendation (ECF Dkt. 21 at pg. 1), that being 12 months' probation for each count to run concurrently, equals a total fine amount of Four-Thousand Three-Hundred Ninety-Two Dollars

---

[4] It is noted that "defendant has not provided any financial information in this case" (ECF Dkt. 20 (PSR) at ¶ 40), however, Defendant, by and through his counsel of record, forwarded a fully executed copy of Defendant's Presentence Questionnaire packet, to include Defendant's Net Worth Short Form and Monthly Cashflow Statement to DPO Agent Whitmoyer via email dated August 12, 2024, reflecting the above-referenced figure.

($4,392.00), which Mr. Blackwood can pay, along with the agreed upon restitution amount of Five-Hundred Dollars ($500).

## CONCLUSION

Sentencing Mr. Blackwood requires the Court to carefully balance the § 3553 factors referenced above. Balancing these factors, the Defendant respectfully requests that this Court sentence Mr. Blackwood to a monetary fine up to the maximum amount per count and $500 in restitution. Such a sentence is sufficient, but not greater than necessary, and reflects the nature and circumstances of the offense, his history and characteristics, protects the community, promotes respect for the law, and deters future crime, while recognizing Mr. Blackwood's acceptance of responsibility for committing these criminal misdemeanors.

Respectfully submitted,　　　　　　　　　　THE PEPER LAW FIRM, PA

November 18, 2024.　　　　　　　　　　　　*s/ Mark A. Peper*
　　　　　　　　　　　　　　　　　　　　　Mark A. Peper, Esq.
　　　　　　　　　　　　　　　　　　　　　548 Savannah Highway
　　　　　　　　　　　　　　　　　　　　　Charleston, SC 29407
　　　　　　　　　　　　　　　　　　　　　843-225-2520 (O)
　　　　　　　　　　　　　　　　　　　　　843-225-2554 (F)
　　　　　　　　　　　　　　　　　　　　　mark@peperlawfirm.com
　　　　　　　　　　　　　　　　　　　　　ATTORNEY FOR DEFENDANT